IN THE UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

**United States of America,**

   **Plaintiff/Respondent,**

v.               Case No. 03-20085-JWL
                   06-3130-JWL

**Carlos Gasca,**

   **Defendant/Petitioner.**

## MEMORANDUM & ORDER

On May 2, 2006, defendant filed a motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255. In response to the motion, the government filed a motion to enforce the waiver of rights contained in Mr. Gasca's plea agreement. After defendant failed to file a response to the government's motion to enforce, the court issued an order providing defendant with an opportunity to retain new counsel to represent him in the case or to file a response to the government's motion to enforce without the assistance of retained counsel. The court expressly cautioned defendant that if defendant did not respond to the order by either filing a pro se response to the motion to enforce or having counsel enter an appearance on or before July 28, 2006, the court would grant the government's motion to enforce as unopposed and would summarily deny defendant's § 2255 motion. The July 28, 2006 deadline passed without any filing from plaintiff or on plaintiff's behalf. Thus, the court granted the government's motion to enforce defendant's plea agreement as unopposed and, in light of that ruling,

summarily denied defendant's § 2255 motion. Defendant has now filed a motion for certificate of appealability (doc. 256) to permit him to appeal the court's denial of his § 2255 motion. As will be explained, the motion is denied.

A COA should issue if the applicant has "made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which the Circuit has interpreted to require that the "petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *See Saiz v. Ortiz*, 392 F.3d 1166, 1171 n.3 (10th Cir. 2004) (quoting *Tennard v. Dretke*, 124 S. Ct. 2562, 2569 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000))). Because the court denied defendant's § 2255 motion on procedural grounds, defendant must demonstrate both that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *United States v. Irving*, 2006 WL 1755961, at *3 (10th Cir. June 28, 2006) (quoting *Slack*, 529 U.S. at 484). Defendant has not met his burden.

In essence, the court denied defendant's § 2255 motion as a sanction for failing to respond to the government's motion to enforce the waiver of rights in defendant's plea agreement. Before dismissing or summarily denying a § 2255 motion for failure to comply with procedural rules, the court must consider "(1) the degree of actual prejudice to the [government]; (2) the amount of interference with the judicial process; [and] (3) the culpability of the [petitioner]." *Tabb v. Dunkle*, 2002 WL 725463, at *1 (10th Cir. Apr. 25, 2002) (quoting *Hancock v. City of Okla. City*, 857 F.2d 1394, 1396 (10th Cir. 1988)). Moreover, the Tenth Circuit requires the

court to "set forth an analysis of these three factors before dismissing a petition" for failing to comply with a procedural rule. *Id.* at *1 (citing *Murray v. Archambo*, 132 F.3d 609, 611 (10th Cir. 1998)). In its order granting the government's motion to enforce as unopposed and summarily denying defendant's motion to vacate, the court did not set forth an analysis of these three factors. It does so now and concludes that these aggravating factors outweigh the judicial system's strong predisposition to resolve cases on their merits.

In this case, the court questions whether any sanction short of granting the motion as unopposed would have sufficed. There is no indication that further notice from the court concerning defendant's obligation to respond to the motion would have had any affect on defendant. Indeed, in his motion for a certification of appealability, he states that after he received the show cause order from the court, he attempted to contact his retained counsel (who had been temporarily suspended from practicing law in the United States District Court for the District of Kansas) to obtain a copy of the government's motion but was unsuccessful. At no time did defendant contact the court to obtain a copy of the government's motion to enforce or to request additional time to respond to the show cause order. Defendant's culpability, then, is quite high and the court, then, does not believe that additional notices from the court would have prompted defendant to contact the court regarding the government's motion. In such circumstances, the court had three choices: grant the government's motion as unopposed (the option exercised by the court); permit the government's motion (and defendant's petition) to remain pending indefinitely in the hopes that defendant might respond in the future; or attempt to resolve the motion on the merits in the absence of a response from defendant. Surely, the

second alternative–simply permitting the government's motion to remain pending indefinitely–would have interfered with the judicial process in terms of docket management and the need for a finality to litigation and would have prejudiced the government in terms of the need to continue to track a case in which the petitioner had shown little interest even after ample notice from the court. The third alternative, in this case, would not have prejudiced the government and would not have interfered with the judicial process because the court would have granted the government's motion on the merits, as the court will now explain.

In its motion to enforce, the government showed that defendant expressly waived his right to challenge his sentence through collateral attack in the plea agreement that he executed. The court will hold a defendant and the government to the terms of a lawful plea agreement. *United States v. Arevalo-Jimenez*, 372 F.3d 1204, 1207 (10th Cir. 2004); *United States v. Atterberry*, 144 F.3d 1299, 1300 (10th Cir. 1998). Thus, a knowing and voluntary waiver of § 2255 rights in a plea agreement is generally enforceable. *United States v. Cockerham*, 237 F.3d 1179, 1181 (10th Cir. 2001). The Tenth Circuit has adopted a three-pronged analysis for evaluating the enforceability of such a waiver in which the court must determine: (1) whether the disputed issue falls within the scope of the waiver, (2) whether the defendant knowingly and voluntarily waived his rights, and (3) whether enforcing the waiver would result in a miscarriage of justice. *See United States v. Hahn*, 359 F.3d 1315, 1325 (10th Cir. 2004) (en banc) (per curiam).

The provision in the plea agreement by which defendant waived his right to challenge his sentence through collateral attack states as follows:

> Defendant knowingly and voluntarily waives any right to appeal or collaterally

4

>attack any matter in connection with this prosecution, conviction and sentence. The defendant is aware that Title 18, U.S.C. § 3742 affords a defendant the right to appeal the conviction and sentence imposed. By entering into this agreement, the defendant knowingly waives any right to appeal a sentence imposed which is within the guideline range determined appropriate by the court. The defendant also waives any right to challenge a sentence or manner in which it was determined in any collateral attack, including, but not limited to, a motion brought under Title 28, U.S.C. § 2255 [except as limited by *United States v. Cockerham*, 237 F.3d 1179, 1187 (10th Cir. 2001)]. In other words, the defendant waives the right to appeal the sentence imposed in this case except to the extent, if any, the court departs upwards from the applicable sentencing guideline range determined by the court. However, if the United States exercises its right to appeal the sentence imposed as authorized by Title 18, U.S.C. § 3742(b), the defendant is released from this waiver and may appeal the sentence received as authorized by Title 18, U.S.C. § 3742(a).

The plea agreement also contained a separate waiver of *Blakely* rights:

>The defendant agrees to waive any rights that may have been conferred under *Blakely v. Washington*, 2004 WL 1402697 (June 24, 2004), and agrees to have the sentence in this case determined under the U.S. Sentencing Guidelines (Guidelines). The defendant further waives any right to have facts that determine the offense level under the Guidelines alleged in an indictment and found by a jury beyond a reasonable doubt; agrees that facts that determine the offense level will be found by the Court at sentencing by a preponderance of the evidence and agrees that the Court may consider any reliable evidence, including hearsay; and the defendant agrees to waive all constitutional challenges to the validity of the Guidelines.

Although defendant did not respond to the motion to enforce, the allegations set forth in his § 2255 petition are pertinent to what the court supposed defendant would have said in any response–that his plea was not knowing and voluntary and, thus, the waiver contained in the plea is invalid. *See Cockerham*, 237 F.3d at 1187 (A plea agreement waiver of post conviction rights does not waive the right to bring a § 2255 petition based on ineffective assistance of counsel claims challenging the validity of the plea or the waiver).

5

In his motion to vacate, defendant first contends that he was denied effective assistance of counsel in connection with the plea agreement because his counsel failed to explain to him the effect of the sentencing guidelines, including the possibility of a 360-month sentence. The record, however, simply does not support defendant's bald assertion. During the Rule 11 colloquy with defendant, Judge VanBebber, the judge who accepted defendant's plea, specifically advised defendant that "there have been guidelines issued for judges to follow in imposing sentences in criminal cases" and asked defendant whether he and his counsel had "talked about how the sentencing guidelines might apply" to defendant's case. In response, defendant stated "I didn't understand the question." The following exchange then took place:

> Court: All right. Have you talked to [your counsel] about how the sentencing guidelines might apply here to your case?
>
> Defendant: No.
>
> Counsel: This is the chart that we looked at.
>
> Defendant: Oh, yes.
>
> Court: I will not be able to determine the guideline sentence for your case until a pre-sentence report has been prepared by the probation officers of the court. And you and the government have had have had an opportunity to challenge or contest the facts reported to me by the probation office, and also to challenge or contest the recommended application of the sentencing guidelines by the probation office. So the sentence might be different from any estimate that you've received. You understand that?
>
> Defendant: Yes. I understand.
>
> Court: And under some circumstances, I would have the authority to depart from the guidelines, and I could impose a sentence that is more severe or less severe than the sentence called for by the guidelines.

6

>           You understand that?
>
> Defendant:   Okay. Yes.

Clearly, defendant did not hesitate to advise the court when he initially did not understand what the court was asking him and, upon having his recollection refreshed by his attorney, did not hesitate to advise the court that he fully understood the implications of the sentencing guidelines. The court, then, is confident that defendant understood the potential effect of the Guidelines on his case.

Next, defendant contends that he received ineffective assistance of counsel in connection with the plea agreement because the waiver provision was never explained to him and he had no understanding of it. The court rejects this argument as it is belied by the record. During the Rule 11 colloquy with defendant, Judge VanBebber exhaustively inquired into whether defendant understood and accepted the terms of the plea agreement and Judge VanBebber specifically inquired about defendant's understanding of the waiver provision. Defendant affirmed that he understood the waiver provision. As noted above, defendant did not hesitate to tell Judge VanBebber when he did not understand a particular question or a particular aspect of the plea process, as highlighted by his initial response to Judge VanBebber's question concerning the applicability of the sentencing guidelines. Because defendant readily sought clarification in that instance, was clearly not afraid to ask questions or seek clarification in that instance, his unreserved responses concerning the waiver provision clearly reveal that defendant understood the nature of his waiver and voluntarily accepted it with knowledge of the consequences of the waiver. *See United States v. Chavez-Salais*, 337 F.3d 1170, 1173 (10th Cir.

2003) ("[T]he content of a defendant's waiver of appeal rights can be made known to him . . . through the colloquy with the court required by Federal Rule of Criminal Procedure 11."). In addition, the plea agreement itself expressly states that defendant knowingly waived his right to collaterally attack his sentence. *See United States v. Cervantes*, 2004 WL 1798305, at *10 (10th Cir. Aug.12, 2004) (rejecting defendant's argument that waiver was not knowing and voluntary where plea agreement expressly stated that the defendant knowingly waived his right to appeal or otherwise challenge sentence); *United States v. Elliott*, 264 F.3d 1171, 1174 n.1 (10th Cir. 2001) ("Indeed, the plea agreement, which he signed, stated that [the defendant] 'knowingly and expressly waive[d] the right' to appeal"). Defendant, then, simply has not shown that he had no understanding of the waiver of rights contained in his plea agreement.

Finally, defendant asserts that he was denied effective assistance of counsel in connection with the plea agreement because he does not speak English (he is Spanish-speaking) and the plea agreement was not translated to him verbatim but only in summary fashion. The court rejects this argument. The plea agreement itself states that it was interpreted into Spanish for defendant by a federally certified interpreter of Spanish in the presence of defendant's counsel. In addition, a Spanish-language interpreter assisted defendant during the plea hearing. During the Rule 11 colloquy with defendant, Judge VanBebber inquired as to whether the plea agreement had been translated for defendant and defendant affirmed that it had been translated. As noted above, Judge VanBebber also inquired into whether defendant understood and accepted the terms of the agreement, including the waiver provision. Defendant affirmed that he did. This court, then, has no doubt that the manner in which the plea agreement was translated had no affect on what

was otherwise a knowing, intelligent and voluntary waiver. *See United States v. Burgos-Cebreros*, 2002 WL 1980625, at *1 (10th Cir. Aug. 28, 2002) (holding that waiver of rights contained in plea agreement was knowing and voluntary despite the fact that defendant did not speak English fluently; interpreter assisted at plea hearing, agreement was translated into Spanish and district judge inquired into whether defendant understood the waiver); *see also United States v. Alvarado*, 1991 WL 166397, at *1 (10th Cir. Aug. 30, 1991) (proceedings involving an interpreter are "entitled to a presumption of regularity which cannot be overcome" by unsupported allegations).

In sum, defendant has not shown that reasonable jurists would find it debatable whether the court erred in its procedural ruling and he has not shown that reasonable jurists would find it debatable whether the petition states valid claim of the denial of a constitutional right. The court, then, declines to issue a certificate of appealability.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's motion for certificate of appealability (doc. 256) is denied.

**IT IS SO ORDERED** this 27th day of October, 2006.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge